190

**In re STINEMAN.**

No. 12786.

District Court, W. D. Pennsylvania.

Aug. 3, 1944.

C. Randolph Myers, of Ebensburg, Pa., Milbank, Tweed & Hope and Thomas P. Farley, all of New York City, for Chase Nat. Bank of City of New York.

Harry Doerr and Roman C. Widmann, both of Johnstown, Pa., for United States Nat. Bank.

Ray Patton Smith, of Washington, D. C., for First Nat. Bank of South Fork.

GIBSON, District Judge.

The Chase National Bank of the City of New York, successor to the rights of the Equitable Trust Company of New York, a general creditor of the bankrupt, filed two petitions with the referee. In one it asserted that the United States National Bank of Johnstown (to the rights of which the United States National Bank in Johnstown has succeeded) originally filed a claim for $10,000, secured by a judgment for that amount. This claim was allowed. Later an amended claim was filed and allowed in the amount of $13,685, interest having been added to the first claim. The interest so added had accrued after the first filing. The petition further stated that the Johnstown Bank, despite the fact that it had never had the value of its lien as security fixed as required by law, had participated in a number of distributions of the general fund on the amount of its claim of $13,-685, had received several distributions from the realty fund, and still claimed the right to its secured claim. The petition prayed the referee to find that the Johnstown Bank, by participating in the distribution of the general fund, had waived its claim as a secured creditor, and also that its original claim of $10,000 was correct in amount, but that the addition of interest thereto, accruing after filing, had been improperly allowed. The referee was asked to order the return to the estate of the amounts received upon the distribution of the realty fund, and also the amounts which had been

received upon the distributions of the general fund pursuant to the illegal addition of interest to the original claim.

At the same time that the Johnstown Bank petition was filed the Chase National Bank presented a similar petition against the First National Bank of South Fork, which had filed a secured claim for $11,290, and still claimed it as such despite the fact that it had participated in a number of distributions of the general fund to the extent of this claim, and with its other unsecured claims.

The referee, in respect to the petition against the National Bank of Johnstown, held that the addition of interest to the claim after filing was contrary to the Bankruptcy Act, and ordered that the amounts received pursuant to it be returned by the Bank to the trustee. He denied the petition, also the petition against the South Fork Bank, in so far as each petition prayed an order declaring that the claimant had waived its status as a secured creditor by participating in the distribution of the general fund. The Chase National Bank had excepted to the refusal of its petition against the National Bank of Johnstown and the South Fork Bank, and has them certified for review. The National Bank in Johnstown has had the order certified for review by which it was directed to return to the trustee the amounts received by it upon distribution pursuant to the alleged illegal addition of interest to its claim.

 The addition of interest to the original claim of the United States National Bank of Johnstown, the estate being insolvent, was in plain violation of the Bankruptcy Act, Sec. 63 sub. a, 11 U.S.C.A. § 103, sub. a, and the order of the referee directing the return of the amount obtained upon past distributions by reason of the addition of interest to it, will be sustained and the exceptions of the United States National Bank in Johnstown dismissed.

 The distribution in the instant case, concerning which the Chase National Bank now complains, certainly was not in accord with ordinary practice. That an owner of a secured claim against a bankrupt could participate at all in the distribution of a general fund without first having his security valued and then claiming for the balance, or without waiver of the lien, is beyond regular bankruptcy experience—so far beyond, in fact, that it seems impossible to sustain it.

As related by the referee and counsel for the local banks some claim could be made for the equity of the distribution despite its failure to follow the requirements of the Bankruptcy Act. It is alleged that the mortgages of the National Bank of Johnstown and of the First National Bank of South Fork were of sufficient value to make those banks secure, but that if they enforced their liens promptly it would tend greatly to the injury of the general creditors. This being so, they were induced by the general creditors to refrain from enforcement by a general agreement that each might participate in the distribution of the general fund to the full amount of its claim and at the same time retain its security until it had been paid the full amount of its claim. It is claimed that this agreement was proposed and urged by counsel for the Chase National Bank, and that that Bank has allowed distribution to be made from the general fund for some seven years without questioning the right of the Johnstown National Bank and the South Fork Bank to retain the security held by each.

 If it were definitely established that the Chase National Bank had full knowledge of the agreement claimed and had benefitted as a result of it, and had induced it in fact, this court, despite some qualms induced by the Bankruptcy Act, might well hold that it could not in good faith now attack it. The record, however, is largely in the referee's office, but such of it as is before the court does not make it plain that the Chase National Bank or its counsel had the definite understanding claimed. Nothing is to be inferred from the failure to question the distributions of the general fund. The Chase National Bank might well have assumed that the Johnstown and South Fork Banks had elected to rely upon the general fund and waive their security. Other than the acceptance of the general distributions without protest the only matter asserted to disclose the agreement of the Chase National Bank is a declaration quoted from P. J. Little Esq., counsel for the trustee and prior thereto counsel for the Chase National Bank. After reciting that in a meeting called to pass upon the First Account of the trustee in 1929, he had suggested that the balance be awarded to the United States National Bank of Johnstown as first lienor, and that later he had been required to have that action set aside, in the presence of New York counsel for the

Chase National Bank, Mr. Little stated " * * * we suggest that under the law the estate should be divided into two items; one item showing funds arising wholly from real estate which does not include any of the leases or the funds from any of the leases; the other fund should be made up of all royalties, rentals, or dividends on stocks or bonds. The first fund to go to the first judgment creditor, the second fund to be divided pro rata among all the creditors."

By the language quoted a distinction is drawn between the two funds. It seems to be far from even recommending the unusual distribution now asserted to have been its outgrowth, but even if so intended it cannot have the effect of authorizing it. The owner of a secured claim cannot participate to the full amount of the claim in the distribution of both the secured and general funds.

The court is of opinion that the exceptions of the Chase National Bank to the order of the referee of June 7, 1943, must be sustained and the said order overruled.